Joseph Martin, Appellant, v. Sixty-Third and Halsted State Savings Bank and George Lenz, Appellees.

Gen. No. 40,315.

124

Opinion filed February 27, 1939. Rehearing denied March 13, 1939.

RATHJE, HINCKLEY, BARNARD & KULP, of Chicago, for appellant; FRANCIS E. HINCKLEY, of counsel.

CLAUSEN, HIRSH & MILLER, of Chicago, for appellees.

MR. PRESIDING JUSTICE McSURELY delivered the opinion of the court.

At the conclusion of all the evidence in the trial of an action seeking damages for fraud and deceit defendants moved for a directed verdict in their favor; the court, acting under section 68 of the Civil Practice Act, reserved its ruling and permitted the case to go to the jury; a verdict was returned against these two defendants for $10,800; the court then entered its judgment against plaintiff, notwithstanding the verdict, and plaintiff appeals to this court.

Plaintiff's claim is based upon the sale to him by defendants of a note for $8,000, secured by a mortgage on certain real estate, which he asserts he was induced to purchase by designed misrepresentations by defend-

ants of material facts, and that relying on such representations he purchased the note and mortgage, but subsequently ascertaining that these representations were untrue he tendered back the papers, which were refused; the note was not paid upon maturity; he alleged damages and was sustained in his claim by the jury.

The jury could properly believe that plaintiff had for upward of 15 years dealt with defendant bank and its cashier, Lenz, a defendant; he was a customer of the bank and his relation with its officers was friendly; he had occasionally purchased mortgages from the bank which had been satisfactory; he considered Mr. Lenz a man of good reputation for honesty and integrity.

Plaintiff testified that in September, 1930, he told Mr. Lenz he had about $8,000 and wished to purchase a mortgage on Chicago real estate, but Lenz dissuaded him and recommended a mortgage for $8,000 which he said was secured on property worth at least $25,000 in the village of Goodenow, in Will county; Lenz assured plaintiff the property was a very good piece of land, that the mortgagors were responsible, that they had spent $6,000 or $7,000 in improving the property, having graded it, laid out streets, installed sidewalks and placed water pipes; that the property was right in the town of Goodenow; that when plaintiff suggested he would go to look at it Lenz dissuaded him from doing so, saying he had a second mortgage on it for $5,000. Relying on these representations plaintiff gave his check, payable to defendant bank, for $8,000, with accumulated interest, and received the note and mortgage which he put away in his vault at the bank.

In July, 1931, plaintiff was told by Lenz that the mortgagors could not pay the note when it came due. Constant inquiries by plaintiff at the bank were fruitless, Lenz reporting that the mortgagors could not pay.

Plaintiff learned there was no second mortgage on the property; attempts were made by the officers of defendant bank to have plaintiff extend payment of the mortgage note, which he declined to do; when he told one of the officers of the bank he was going to Goodenow to investigate he was assured that everything was all right, that he would get his money, but his reply was that he needed the money at once, but no money was paid; in October, 1931, he visited Goodenow and inspected the mortgaged property.

A well informed witness testified that Goodenow was a tract of 20 acres, platted about the time the C. & E. I. railway was constructed in 1869 or 1870; it is not an incorporated village; there is one general store and post office, an elevator and a tavern; there are about 20 houses altogether.

The 50 acre tract described in the mortgage in question is not in Goodenow but lies to the north. The witness Ferris Gaines was thorougly familiar with the property and described it as the drainage basin of three or four sections of nearby farmland. This property had been sold in 1926 by Ferris Gaines to Henry Thies, vice president of defendant bank, for $8,000, who had at once sold it to Alice Schneider and Bertha H. Smith for $13,000, taking from them the $8,000 mortgage in question as part of the purchase price; the bank took this $8,000 mortgage and provided the funds for the purchase of the property by Thies, who kept the $5,000 profit on the transaction without any investment by him.

Gaines, the seller of the land to Thies, gave as his opinion that the value of the land when he sold it in 1926 was $8,000, and that in his opinion it was of the same value in September, 1930. Other informed witnesses valued the land at about the same amount. The witness Gaines also testified that they had an awful time getting the thistles out from the land. The note

first matured in September, 1929, but was extended by the bank from time to time.

Under the new Practice Act section 68 (3)a, [Ill. Rev. Stat. 1937, ch. 110, § 192; Jones Ill. Stats. Ann. 104.068], either party may request the court for a directed verdict in his favor and the court may reserve his decision, submit the case to the jury and pass upon the motion after verdict is rendered. In *Capelle v. Chicago & N. W. Ry. Co.,* 280 Ill. App. 471, it was held that in passing upon such a motion the trial court has no more power to weigh and determine controverted questions of fact under the present Practice Act than it had under the old act. See also *McNeill v. Harrison & Sons, Inc.,* 286 Ill. App. 120; *Gardiner v. Richardson,* 293 Ill. App. 40. In *Wolever v. Curtiss Candy Co.,* 293 Ill. App. 586, 600, 601, it was held that it was only where there was no evidence as a matter of law to sustain either a plaintiff's or a defendant's claim that a judgment may be rendered notwithstanding the verdict. *Farmer v. Alton Building & Loan Ass'n,* 294 Ill. App. 206; *Synwolt v. Klank,* 296 Ill. App. 79. Other cases to the same effect might be cited.

The essential elements of a cause of action in a case for fraud and deceit are a representation, falsity, scienter, deception and injury. *Foster v. Oberreich,* 230 Ill. 525, 527. And in other cases it is said that the representations must be shown to be false and known to be false by the defendant making them, or made as a positive assertion, recklessly, and made to deceive the plaintiff, who believed such representations to be true and, relying on them, was induced to part with his money and has suffered damages thereby.

The jury could reasonably find that there was evidence of all these elements in the instant case. Lenz represented to plaintiff that the property securing the note was available subdivision property located in the town or village of Goodenow; that the land was worth

from $450 to $500 an acre; that the makers of the note had invested $6,000 to $7,000 in improvements upon the land; that the officers of the bank thought so highly of the land that Lenz had personally lent $5,000, secured by a second mortgage on the land. All these statements were known to defendants to be untrue and were made for the purpose of having plaintiff part with his money.

Defendants cite cases involving a different state of facts. In *Malewski v. Mackiewich,* 282 Ill. App. 593, the purchasers of a mortgage note for $6,000 claimed they were deceived by the representation that this was the entire indebtedness secured by the trust deed; the note for $6,000 which they purchased was in fact one of a series of 6 notes aggregating $13,000, all secured by the same trust deed. We held that plaintiffs were well acquainted with the security, that they received the note with the trust deed and an opinion of title, with other papers, showing clearly that the entire amount secured by the trust deed was $13,000; we held that upon the facts the verdict should have been for the defendant and that the motion for judgment for the defendant notwithstanding the verdict was properly allowed. Nearly all the cases cited by defendants involved proceedings in equity where some contract or deed was sought to be set aside.

Defendants argue that plaintiff should have fully advised himself as to all the facts and should have tested all the representations made before parting with his money. Whether or not a plaintiff under such circumstances is guilty of negligence is a question of fact to be decided by a jury. Here there were many circumstances, some of which we have referred to, which would justify the jury in concluding that plaintiff was dissuaded from making a thorough investigation. This is the essence of the opinions in *Witherwax v. Riddle,* 121 Ill. 140, and *Kehl v. Abram,* 112 Ill. App.

77, 81, affirmed by the Supreme Court in 210 Ill. 218, 224, 225. The facts in the latter case are very much like those in the instant case.

The evidence shows clearly that the makers of the note were unable to pay the indebtedness. Defendants say that Mrs. Schneider had $8,000 of other property out of which to pay the instant note. The record does not support this statement. All it shows in this respect is that Mrs. Schneider owned an old two-story building on South Halsted street in Chicago on which are mortgages aggregating $19,000. There is no evidence as to what the equity is worth. Moreover, the note in question was payable in currency, of which the mortgagors had none, or at least not sufficient to pay the note.

There is some argument as to the amount of the verdict. Defendants did not question this amount upon the trial either by a motion for a new trial or in any other way. In fact, no motion for a new trial was made. Their position, upon the trial and here, with reference to damages is that plaintiff was entitled to nothing. Apparently the jury was of the opinion that plaintiff was entitled to recover the principal amount he gave defendants—$8,000—with interest, which is approximately the amount of the verdict. We see no reason to disagree.

For the reasons indicated the judgment is reversed and the cause is remanded with directions to enter judgment upon the verdict as of the date it was returned.

*Reversed and remanded with directions.*

MATCHETT and O'CONNOR, JJ., concur.